

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, NY 10278*

October 15, 2024

**VIA ECF**
The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Michael Wilbon*, S1 23 Cr. 52 (RA)

Dear Judge Abrams:

      Defendant Michael Wilbon is scheduled to be sentenced on October 22, 2024, after he pled guilty before Magistrate Judge Sarah Netburn pursuant to a plea agreement on July 10, 2024 to Counts One, Two, and Six of the Superseding Indictment. Count One charges the defendant with participating in a conspiracy to commit Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951. Count Two charges him with participating in a Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951. Count Three charges him with possessing a firearm, which he brandished, during the Hobbs Act robbery charged in Count Two, in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii). This Court accepted the defendant's guilty plea on July 17, 2024.

      The Probation Office has calculated a sentencing range under the United States Sentencing Guidelines ("U.S.S.G" or the "Guidelines") of 121 to 151 months' imprisonment, in addition to the 84-month mandatory term of imprisonment on Count Six, for a total Guidelines range of 205 to 235 months' imprisonment.[1] In its Presentence Investigation Report ("PSR"), the Probation Office has recommended a sentence of 154 months' imprisonment followed by three years of supervised release in its Presentence Investigation Report ("PSR"). Defense counsel has requested a sentence of 96 months' imprisonment followed by three years of supervised release.

---

[1] The parties stipulated in the plea agreement to a Guidelines range of 108 to 135 months' imprisonment, in addition to the 84-month mandatory sentence under Count Six, for a total Guidelines range of 192 to 219 months' imprisonment, and the Government stands by the plea agreement. This determination was based on an offense level of 30 and criminal history category of II. The Probation Office has calculated a higher Guidelines range based on an offense level of 31 and criminal history category of II. The discrepancy in the parties' and the Probation Office's offense level calculation stems from a one-point enhancement under § 2B3.1(b)(6) added by the Probation Office to the January 15, 2023 robbery in Brooklyn because a controlled substance – marijuana – was stolen during the robbery.

For the reasons explained below, the Government respectfully submits that a below-Guidelines sentence of at least 168 months' imprisonment followed by three years of supervised release is appropriate.

### I.    Background and Offense Conduct

In December 2022, the Government began investigating a string of several gunpoint Hobbs Act robberies of convenience stores and smoke shops in Manhattan and the Bronx, New York. (PSR ¶ 35.) These robberies occurred between December 2022 and January 2023 and involved at least seven different participants, including defendant Michael Wilbon, who participated in a total of seven armed Hobbs Act robberies during this period—four in the Bronx, one in Manhattan, and two in Brooklyn. (*Id.* ¶¶ 37–49.)

A.    December 7, 2022 Robbery

Around midnight on December 7, 2022, four robbers, including Wilbon, entered a deli store in the Bronx as it was about to close. (*Id.* ¶ 37.) As they entered, Wilbon approached and pointed a gun directly at a female customer standing near the door. (*Id.*) Wilbon then went behind the counter to take money from the cash register, pointed a gun at the store clerks, and also used his gun to hit at least one store clerk in the head. (*Id.*) Another robber kicked a deli clerk in the head. (*Id.* ¶ 38.) Surveillance images show both store clerks bleeding from their heads following the robbery. (*Id.*) The robbers stole approximately $4,500 worth of cash and goods, along with the coat and cellphone of one of the store clerks. (*Id.* ¶¶ 38 – 39.)

B.    December 25, 2022 Robbery

Shortly after midnight on December 25, 2022, four robbers, including Wilbon and others who participated in the prior robbery, entered a convenience store in the Bronx while there were numerous customers and employees inside. (*Id.* ¶ 40.) While inside the store, one of the robbers pulled a shotgun out of a long, skinny box, which he brandished throughout the store, causing customers to immediately flee. Wilbon also carried a handgun that he pointed at and held directly against the cheek of the store clerk. (*Id.*) The robbers stole cash from the cash register and approximately $7,000 worth of lottery tickets before exiting the store. (*Id.*)

C.    December 26, 2022 Robbery

The following evening, six robbers – including several of the same robbers from the previous two robberies – entered a smoke shop in the Bronx. (*Id.* ¶ 43.) At least two robbers carried firearms into the store, including Wilbon. (*Id.*) Wilbon pointed a handgun directly at a customer's face near the entrance of the store, pushed her down, then proceeded to point his gun directly at a store clerk, who immediately moved to the ground. (*Id.*) The robbers stole cash and smoking-related items totaling approximately $2,180 from the store. (*Id.*)

D.    January 11, 2023 Robbery

At approximately 11:30 pm on January 11, 2023, four robbers, including Wilbon, entered

the same convenience store that had been robbed on Christmas, while at least one store clerk and one customer were inside. (*Id.* ¶ 45.) Wilbon pointed a gun at a deli clerk before packing items into a bag. (*Id.*) Another robber brandished a shotgun and pointed it directly at the deli clerk behind the counter. (*Id.*) The robbers stole approximately $6,000 in cash from the store. (*Id.*)

### E. January 12, 2023 Robbery

A couple hours after the January 11, 2023 robbery, at approximately 2:45 a.m. the next day, six robbers, including Wilbon and others who had participated in the prior robberies, entered a deli store in Manhattan. (*Id.* ¶ 46.) Two of the robbers brandished handguns, and one robber hit the store clerk on the head with a gun. (*Id.* ¶¶ 46–47.) The robbers stole approximately $7,090 in cash and goods. (*Id.* ¶ 47.) As they exited the store, Wilbon and another robber pushed and threatened a customer who had entered the store while the robbery was occurring and was prevented from leaving. (*Id.*)

### F. January 15, 2023 Robbery

On January 15, 2023, Wilbon and one other robber entered a deli store in Brooklyn. (*Id.* ¶ 48.) Wilbon pointed a gun at two customers, in addition to repeatedly kicking, punching, and hitting one of the customers with that firearm and grabbing, shoving, and hitting the other customer. (*Id.*) One of the customers had a cut to his forehead and was taken to the hospital when police arrived at the scene. (*Id.*) The two robbers stole approximately $2,249 in cash and other items, including marijuana, along with a cellphone of one of the customers. (*Id.*)

### G. January 16, 2023 Robbery

The next day, Wilbon and three other robbers entered a deli store in Brooklyn. (*Id.* ¶ 49.) Wilbon and two others carried guns. (*Id.*) Wilbon pointed his gun at a customer who was about to walk out of the store. (*Id.*) Wilbon also walked up to a store employee who appeared to be a cook, pointed his gun at him, and hit him on the head with his gun. (*Id.*) The store cook required five stitches to his head as a result. (*Id.*) The robbers stole approximately $2,000 from the store. (*Id.*)

## II.    Criminal History

In addition to the instant convictions, Wilbon has eight prior convictions, only one of which contributes criminal history points under the Guidelines. (PSR ¶¶ 127–134.) He also has two juvenile adjudications from 2005, when he was fourteen years old. (*Id.* ¶¶ 125–126.) His most recent conviction in 2012, which is the basis for his criminal history category of II, was for second-degree robbery causing injury and criminal possession of a loaded firearm in the second degree, for which he was sentenced to ten years in prison followed by five years of post-release supervision. (*Id.* ¶ 134.) This incident involved Wilbon stealing cash from a victim and causing unspecified physical injury to the victim as Wilbon fled. (*Id.*) Wilbon was paroled for these offenses in September 2021, and his parole expired in March 2024. (*Id.*) Thus, he committed the instant string of seven robberies while he was still on parole.

Wilbon's extensive criminal history shows multiple violent and non-violent convictions

beginning from his teenage years and continuing to the present. He has four prior robbery or attempted assault convictions or adjudications. In addition to the recent 2011 conviction, in 2005 in Texas, Wilbon was convicted of robbery and assault causing bodily injury from punching a ten-year-old victim when Wilbon was fourteen, and Wilbon was sentenced to one year of probation. (*Id*. ¶ 126.) In 2007 in Buffalo, New York, he was convicted of second-degree robbery involving the display of a firearm and/or causing physical injury and sentenced to one year of imprisonment. (*Id*. ¶ 127.) In 2011, in Buffalo, New York, he was convicted of attempted assault in the third degree, with intent to cause physical injury, and sentenced to 30 days' imprisonment. (*Id*. ¶ 131.)

In addition, Wilbon has two prior convictions or adjudications for evading arrest, from 2005 and 2008. (*Id*. ¶¶ 125, 129.) He also has two convictions in 2009 and 2011 for intending to obtain transportation without paying, a 2008 conviction for failing to identify himself or giving false or fictitious information, and a 2011 conviction for false personation. (*Id*. ¶¶ 128, 130, 132–133.)

Wilbon's record while incarcerated has also been troubling. Since being incarcerated at the Metropolitan Detention Center since January 2022 in connection with the instant case, Wilbon has been sanctioned at least 15 different times for possessing dangerous weapons or other contraband items such as drugs or alcohol and refusing to obey orders. (*Id*. ¶¶ 19–32.) More recently, in June 2024, he was punished for making "a sexual proposal/threat." (*Id*. ¶ 20.) Similarly, while Wilbon was previously incarcerated in New York state custody, he received approximately 25 disciplinary sanctions and was removed from several programs as a result. (*Id*. ¶ 134.) When Wilbon was on parole between September 2021 and November 2022, he repeatedly failed to show up at drug/alcohol treatment programs and anger management programs. (*Id*.)

### III.  Applicable Law

The United States Sentencing Guidelines still provide strong guidance to courts following *United States v. Booker*, 543 U.S. 220 (2005). Although the Guidelines are no longer mandatory, because they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings, *id*. at 49. After that calculation, a sentencing judge must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; the defendant's need for rehabilitation; the kinds of sentences available; and the need to avoid unwarranted disparities in the sentences imposed on similarly situated defendants. Ultimately, the Court must impose a sentence that is sufficient, but no greater than necessary, to serve the purposes of sentencing.

### IV.  Discussion

The Government respectfully submits that a below-Guidelines sentence of at least 168 months' imprisonment would be sufficient, but not greater than necessary, to serve the purposes of sentencing.

First, this sentence would appropriately account for the nature and circumstances of the offense, and in particular, the repeated unwarranted violence that Wilbon inflicted on store clerks and store customers during almost all of the robberies he participated in. As captured on surveillance video of these robberies, he regularly and consistently approached customers and store clerks by pointing a gun directly at them and shoving them, terrifying them, or hitting them with a gun, despite the fact that these innocent bystanders were not fighting back and seemed to be entirely compliant. Wilbon appears to have carried a firearm in all seven robberies he participated in, and in at least five of those robberies, he was physically violent with innocent victims or witnesses of the robberies.

In the December 7, 2022 robbery, the store clerks were hit on the head by Wilbon using a gun, and also beaten by another robber – to the point that when the robbers fled and the two clerks got up off the ground, a pool of blood could be seen on the floor where they were and at least one clerk was still openly bleeding from his head. In the January 15, 2023 robbery, Wilbon can be seen actively kicking, punching, and hitting a customer with his gun, and also beating another customer. When the police arrived, they took one of those customers to the hospital. In the January 16, 2023 robbery, Wilbon hit the deli store cook on the head with a gun so severely that it required five stitches to the victim's head. And even when Wilbon did not get physical, he still acted in an incredibly dangerous manner, putting numerous innocent people going about their daily lives in fear of death or serious bodily injury just so the defendant and his co-conspirators could enrich themselves. For instance, in the December 25, 2022 robbery, Wilbon held a gun directly against the cheek of the store clerk. While it is fortunate that Wilbon did not discharge his gun or otherwise inflict even more serious injuries on his victims, his consistent pattern of using excessive violence and an overly aggressive approach was still extremely dangerous and harmful to the community. No other defendant in the conspiracy participated in as many robberies of stores as Wilbon did, or with as much violence and aggression as Wilbon consistently employed.

Second, a substantial sentence of imprisonment is warranted based on Wilbon's criminal history. His participation in the current string of gunpoint robberies is not an aberration. He has four prior robbery or attempted assault convictions dating back to 2005, when he was a young teenager. His most recent prior conviction, from 2011, was for second-degree robbery causing injury and criminal possession of a loaded firearm in the second degree, for which he was sentenced to ten years in prison. Despite serving a lengthy sentence for that conviction, just over a year after being released on parole for that conviction, Wilbon committed the instant string of violent, gunpoint store robberies – while he was still under a court-ordered term of supervision. The fact that Wilbon committed seven armed robberies within eighteen months of being released from prison and while on parole, after being sentenced to ten years' imprisonment, underscores the need for a substantial prison sentence adequate to deter the defendant from engaging in future crimes and to protect the public. Moreover, Wilbon's numerous infractions while incarcerated and his prior record on supervised release also weigh in favor of a significant sentence of incarceration.

Third, a sentence of at least 168 months' imprisonment would appropriately reflect Wilbon's relative culpability compared to his three co-defendants who have already been sentenced. Yahtek Johnson, who participated in two robberies in the conspiracy by serving as a lookout and did not enter either of the robbed stores while they were being robbed, was sentenced to 50 months' imprisonment, below his Guidelines range of 78 to 97 months in prison. Francis

Shane, who participated in two robberies by serving as the getaway driver for one robbery, loading a shotgun used in a robbery into the robbery vehicle on the way to the robbery, and packing stolen items inside the robbed store while the robbery was occurring, was sentenced to 60 months in prison, below the Guidelines range of 77 to 96 months' imprisonment. Shawn Thomas participated in three robberies by brandishing a shotgun during one of those robberies, and violently kicked and pushed a store customer and a store clerk during the commission of the other two robberies. He was sentenced to 72 months' imprisonment, also below his Guidelines range of 87 to 108 months' imprisonment.

Wilbon is the most culpable among this group because he participated in more than double the number of robberies of those co-defendants and because he played a significantly more active, violent, and dangerous role than Francis Shane and Yahtek Johnson. Thomas's conduct during the robberies he participated in was very violent and dangerous, causing injury to victims, similar to Wilbon, but Wilbon participated in many more robberies, carried a firearm in all of them, is a decade older than Thomas, and has a much more extensive criminal history than Thomas. Thomas had only one prior conviction, for possessing a loaded firearm that he discharged, causing injury to himself. Thus, the broader extent and more violent nature of Wilbon's participation in the robberies, along with Wilbon's substantial criminal history, warrants a significantly longer term of incarceration than the three co-defendants whom have already been sentenced.

The eight-year sentence sought by Wilbon falls far short of adequately accounting for the seriousness of the instant offenses, the defendant's full history and characteristics, and the substantial need for deterrence. In particular, a sentence of only 96 months' incarceration would be less than the ten-year sentence he previously received in 2011 for committing a single robbery of an individual that caused injury. That 2011 sentence failed to deter Wilbon from committing the instant seven armed robberies, beginning only 15 months after being released from prison and while still on parole. A sentence of 96 months would also be inconsistent with the sentences already imposed on Wilbon's co-defendants, as it is less than double Johnson's sentence of 50 months, when Johnson participated in only two robberies compared to Wilbon's seven, and Johnson was a lookout who did not even enter inside the robbed stores during the robberies.

[REMAINDER INTENTIONALLY LEFT BLANK]

For these reasons, the Government respectfully submits that a substantial sentence of no less than 168 months' imprisonment followed by three years of supervised release is warranted.[2]

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:  Katherine Cheng
    Assistant United States Attorney
    (212) 637-2492

---

[2] The Government agrees with the Probation Office's recommendation that the Court impose several special conditions, including outpatient alcohol or substance abuse treatment, a search condition, and certain financial restrictions set forth in the PSR. In light of recent Second Circuit decisions, the Government respectfully requests that, for each special condition of supervised release that the Court intends to impose, the Court briefly state its reasons for concluding that each such special condition is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b). *See, e.g.*, *United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) (vacating special condition and remanding for district court to provide sufficient explanation for imposition of condition); *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) (same); *United States v. Jimenez*, No. 22-1022, 2024 WL 1152535 (2d Cir. Mar. 18, 2024) (summary order) (same).